**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STATE OF OHIO, ex rel. | ) | CASE NO. 5:12-cv-02237 |
| RODNEY ARMSTRONG, | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| STOW-MUNROE FALLS CSD | ) | |
| BOARD OF EDUCATION, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are the following motions, both of which are fully briefed: (1) plaintiff/relator Rodney Armstrong's ("plaintiff" or "Armstrong") motion to dismiss amended counterclaim (Doc. No. 6);[1] and (2) defendants' motion for judgment on the pleadings (Doc. No. 10).[2] For the reasons discussed herein, both motions are denied as moot. Further, the Court sua sponte remands this entire action to the Summit County Court of Common Pleas, abstaining with respect to any First Amendment claim and declining to exercise supplemental jurisdiction over all of the state law claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2002, defendant Stow-Munroe Falls CSD Board of Education ("the Board") held an executive session. (Compl., Doc. No. 1-1, ¶ 9; Am. Answer, Doc. No. 5, ¶ 9.) During the session, the Board, which included plaintiff (Compl. ¶ 8; Am.

---

[1] Defendants filed their opposition (Doc. No. 8) and plaintiff/relator filed a reply (Doc. No. 9).

[2] Plaintiff/relator filed his opposition (Doc. No. 11) and defendants filed a reply (Doc. No. 13).

Answer ¶ 8), learned of an investigation that was underway, and sensitive information was revealed regarding that investigation. (Compl. ¶ 10; Am. Answer ¶ 10.) Board members were instructed not to disclose that information outside of the executive session. (Compl. ¶ 11; Am. Answer ¶ 11.) Plaintiff alleges that this instruction was improper (Compl. ¶ 11), and allegation that defendants deny (Am. Answer ¶ 11).

Allegedly in response to concerns that the investigation and the ramifications of the specific conduct under investigation would not see the light of day, (Compl. ¶¶ 13-14), Armstrong wrote a letter to the Superintendent of Instruction for the Ohio Department of Education, which contained some of the information discussed during the executive session (Compl. ¶ 15; Am. Answer ¶ 15).

On August 13, 2012, the Board held another executive session, this time to discuss the discipline of a public official. (Compl. ¶ 18; Am. Answer ¶ 20.) Armstrong alleges that he was the public official in question and that his disclosure to the Superintendent of Instruction was the subject of the meeting. (Compl. ¶ 20.) At this executive session, Armstrong announced that the session did not comply with Ohio law and left the proceedings. (Compl. ¶ 19; Am. Answer ¶ 19.)

Also on August 13, 2012, several members of the Board sent Armstrong a letter[3] stating that Armstrong "must immediately cease and desist from disclosing confidential [Stow-Munroe Falls City School] District information." (Compl. ¶¶ 21-22; Am. Answer ¶¶ 21-22.) The letter also warned Armstrong that further disclosures could

---

[3] Armstrong's complaint states that the letter is attached as Ex. 1 (Compl. ¶ 21), but defendants did not include a copy of that exhibit with their notice of removal. A copy of the letter is, however, in the record. (*See* Doc. No. 11-1.)

2

result in exclusion from executive sessions, noted the potential adverse consequences to the school district from further disclosures, and announced that the Board was considering legal action against Armstrong. (Compl. ¶¶ 22–24; Am. Answer ¶¶ 22–24.)

On August 27, 2012, Armstrong brought suit in the Summit County Court of Common Pleas against the Board and five Board members: Fred Bonacci, Catherine Bulgrin, Karen Powers, Richard Spangler, and Karen Wright. The complaint sets forth five counts against some or all of the defendants, including state law claims alleging improperly convened executive sessions (count one), failure to record minutes of public meetings (count two), issuing an improper formal reprimand against Armstrong (count three), and defamation (count five), as well as one federal claim that defendants violated Armstrong's First Amendment right to free speech (count four). The complaint seeks: (1) an injunction ordering compliance with Ohio statutes relative to public meetings; (2) specific monetary forfeitures and attorney's fees under those Ohio statutes; and (3) attorney's fees and compensatory and punitive damages for defamation. There is no request for any relief relative to a First Amendment violation.

On the strength of the First Amendment free speech claim in count four, defendants removed the case to this Court on August 31, 2012. Defendants then filed an answer and counterclaim on September 10, 2012 (Doc. No. 4), which was amended on September 28, 2012 (Doc. No. 5). The counterclaim, brought only by the Board, not the individual members, contains two state law claims: that Armstrong's disclosures violated the Board's bylaws and policies, as well as Ohio Rev. Code § 102.03(B); and, that Armstrong breached his fiduciary duties as a Board member with respect to confidential

3

information obtained through executive session. The Board seeks several different forms of relief: a declaratory judgment that Armstrong may not disclose confidential information; a declaratory judgment that Armstrong breached his fiduciary duties as a public official; preliminary and permanent injunctions enjoining Armstrong from further disclosures and breaches; damages, costs, and expenses, including attorney's fees; and whatever other relief the Court deems proper.

Armstrong filed his motion to dismiss (Doc. No. 6) in response to the Board's counterclaim. Several months later, defendants filed their motion for judgment on the pleadings. (Doc. No. 10.)

## II. ANALYSIS

Here, plaintiff set forth four state law claims, along with a single First Amendment free speech claim[4] upon which defendants based their removal petition. Once defendants had gained access to this Court via removal, they then filed their own two state law counterclaims for breach of certain obligations set forth in Ohio statutes.

The parties agree that the statutory basis for this Court's jurisdiction over all of the state law claims is supplemental jurisdiction, set forth in 28 U.S.C. § 1367. Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[4] In his opposition to defendants' motion for judgment on the pleadings, Armstrong characterizes count four of his complaint as a First Amendment retaliation claim. (*See* Doc. No. 11 at 127.) No matter how one characterizes count four, the underlying issue is whether Armstrong engaged in protected speech when he revealed confidential information obtained during an executive session of the Board.

4

(3) the district court has dismissed all claims over which it has original
jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for
declining jurisdiction.

"[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction[.]" *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (internal quotation marks and citation omitted). That "wide latitude" in determining whether to retain jurisdiction over state claims is not restricted to instances where all claims over which the district court has original jurisdiction are dismissed under § 1367(c)(3), but extends to cases in which state law "predominates" under § 1367(c)(2). *Dashields v. Robertson,* No. 99–1124, 215 F.3d 1318 (table), 2000 WL 564024, at *3 (4th Cir. May 10, 2000) (per curiam). In exercising its discretion, a district court can consider such factors as judicial economy, convenience, fairness and comity. *Pinney*, 196 F.3d at 620.

Federal courts have not hesitated to dismiss or remand state causes of action under § 1367(c)(2) when the state claims would require elements of proof distinct from the federal claim and cause a substantial expansion of the suit beyond that necessary and relevant to the federal claim. *See Green v. Zendrian,* 916 F.Supp. 493, 498 (D. Md. 1996). "[A] federal court with pendent [i.e., supplemental] jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues 'substantially predominate' over the federal issues in terms of proof, scope, or comprehensiveness of the remedy sought." *Bodenner v. Graves,* 828 F.Supp. 516, 518 (W.D. Mich. 1993). *See also James v. Sun Glass Hut of California, Inc.,* 799 F.Supp. 1083 (D. Colo. 1992), (finding that plaintiff's six state law claims of breach of contract, promissory estoppel,

5

fraud, negligent misrepresentation, bad faith and outrageous conduct predominated over her single federal claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*).

   Although the single First Amendment claim in the complaint was arguably adequate to open the door to this federal court for removal purposes, the state law claims set forth by plaintiff clearly predominate over any First Amendment claim. Further, the state law claims involve matters that are peculiarly within the province of the state courts and are much better decided by those courts, namely, claims under Ohio statutes governing the behavior of public bodies holding executive sessions, the recording of minutes of public meetings, and the taking of formal actions against public officials by other public officials, along with the tort of defamation.[5] Similarly, defendants' counterclaims are equally within the province of state courts.

   If this Court were to exercise its discretion to retain supplemental jurisdiction over plaintiff's state law claims and defendants' state law counterclaims, it would be tantamount to the proverbial "tail wagging the dog." *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) ("Generally, a district court will find substantial predomination where a state claim constitutes the real body of a case, to which the federal claim is only an appendage -- only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.") (internal quotation marks and citations omitted).

---

[5] If it were simply a matter of supplemental jurisdiction over a claim of defamation, the Court would probably not consider remand. However, the other state law claims herein, involving matters of particular public policy concern to Ohio and its officials, should simply not be decided by a federal court.

Clearly, the state-law claims on both sides of this case constitute "the real body of [the] case" and should be resolved by a state court applying the law of its own state.

This Court, therefore, concludes that it should not exercise its supplemental jurisdiction over the state law claims.

An additional reason for declining supplemental jurisdiction over all of the state law claims involves application of federal abstention doctrine. Plaintiff alleges in count four of his complaint that "[o]n or about August 13, 2012, Board and Board Members, did threaten to criminally prosecute and/or expel Relator/Plaintiff from his elected position if he did not 'cease and desist' his disclosure of information to the Superintendent of Public Institutions for the State of Ohio under color of state law." (Compl. ¶ 44.) He asserts that this is a civil rights violation under Section 1983.

Whether plaintiff, as an elected public official in Ohio entitled to attend executive sessions of the Board that are not open to the public, is permitted, under the guise of "free speech," to disclose confidential information learned during those executive sessions is a question so closely aligned to the issues raised in the state law claims that it should also be answered by a state court.[6] In fact, this is a situation where federal abstention with respect to the First Amendment claim is appropriate.[7]

---

[6] The Court notes that Ohio Revised Code § 102.03 provides, in relevant part:

> (B) No present or former public official or employee shall disclose or use, without appropriate authorization, any information acquired by the public official or employee in the course of the public official's or employee's official duties that is confidential because of statutory provisions, or that has been clearly designated to the public official or employee as confidential when that confidential designation is warranted because of the status of the proceedings or the circumstances under which the information was received and preserving its confidentiality is necessary to the proper conduct of government business.

[7] It is well-established that a public official's or employee's right to free speech under the First Amendment

7

"The federal courts have long assumed the authority to decline to exercise jurisdiction explicitly vested in them by Congress. The courts have also assumed that they may decline to enforce certain substantive federal rights, usually those protecting individual civil liberties against state invasion. These presumptions of authority are manifested in the various 'abstention' doctrines, developed by the federal courts largely within the last fifty years." Martin H. Redish, *Abstention, Separation of Powers, and the Limits of Judicial Function*, 94 Yale L.J. 71 (1984). One such abstention doctrine is applicable here with respect to plaintiff's alleged First Amendment claim.

In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), a case attacking an order of the Texas Railroad Commission, the Supreme Court held that a federal court may decline to exercise its jurisdiction to protect or enforce legal rights the exercise of which might be prejudicial to the public interest. The Supreme Court noted:

> Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest; for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy. While many other questions are argued, we find it necessary to decide only one: Assuming that the federal district court had jurisdiction, should it, as a matter of sound equitable discretion, have declined to exercise that jurisdiction here?

*Id*. at 317-18 (internal quotation marks and citations omitted). Here, it is for a state court to decide the interface between ethical and fiduciary obligations created by Ohio statutes

---

is not absolute, *see Connick v. Myers*, 461 U.S. 138, 146 (1983), and must be weighed against "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Id*. at 150.

relating to public meetings, executive sessions, and the First Amendment. In particular, it is for an Ohio court to decide whether an individual's disclosure of information obtained during an executive session of a public board violates Ohio law and/or is in some way protected by the First Amendment.

Accordingly, because the Court concludes that it should abstain from exercising jurisdiction over the First Amendment claim in count four of the complaint, the sole federal claim will no longer be before the Court. As a result, the Court is justified in declining to exercise its supplemental jurisdiction over the state law claims.

### III. CONCLUSION

For the foregoing reasons, this entire action is sua sponte **REMANDED** to the Summit County Court of Common Pleas. Both pending motions (Doc. No. 6 and Doc. No. 10) are denied as moot.

**IT IS SO ORDERED**.

Dated: September 25, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**